UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERNEST GARGARO,

      Plaintiff,

v.                                                                    Case No. 04-75060

OPPENHEIMER & CO.,                               HONORABLE AVERN COHN

      Defendant.

_____/

**MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.**

**I. Introduction**.

      This is an age discrimination case.  Plaintiff Ernest Gargaro (Gargaro) claims

Fahnstock & Company (Fahnstock) terminated his employment because of his age.

Defendant Oppenheimer & Company (Oppenheimer) is the successor to Fahnstock.

Oppenheimer provides financial services to individuals and businesses.

      Before the Court is Defendant's Motion for Summary Judgment.  For the reasons

that follow, the motion is GRANTED in part, and DENIED in part.

**II. Background.[1]**

      Gargaro was born on July 15, 1947.  He is a licenced certified public accountant

specializing in taxation and retirement plan development and interpretation, and has

worked his entire career with accounting and brokerage firms.  First of Michigan hired

Gargaro in 1984 to work as Vice President in the Tax Incentive Planning Department, a

_____

[1] The background is gleaned from the parties' papers.

position he held for eleven years.

Gargaro says he never had any employment problems.  Oppenheimer says Gargaro was cited in December, 1993, for failing to travel outside of his office enough and criticized for not making enough branch visits.

Fahnstock announced its acquisition of First of Michigan in 1997.  The acquisition was completed in 1999, at which time Gargaro began to work for Fahnstock.  During the acquisition, Fahnstock's Chief Executive Officer and majority owner Albert Lowenthal (Lowenthal) asked Gargaro to assume new responsibilities, but provided no additional pay or support staff.  These new duties involved instructing and assisting brokers in developing client retirement plans, and otherwise supporting all retirement functions in all the consolidated firms' offices, as Fahnstock did not have its own retirement department.  These duties included covering all of the joint First of Michigan/Fahnstock offices nationwide, as well as overseeing and supporting more than 1,200 company representatives throughout the country.

By 2001, Gargaro's job required that he be available to answer questions and provide advice to brokers regarding tax and retirement products.  In the Spring of 2001, Congress and President Bush were debating tax reform legislation.  In June, 2001, in anticipation of a new tax law, Lowenthal asked Gargaro to outline for him a plan to visit the offices around the country to promote an understanding of changes in tax laws that would impact the company's retirement products.  At this time, Lowenthal allegedly told Gargaro that he needed to put "more energy into his job."  On June 11, 2001, Gargaro submitted a memorandum setting forth a proposed travel plan for the balance of 2001.  The memorandum stated that more support staff would be necessary to accomplish the

2

goal, and that he should be able to complete the visits by the end of September at the latest.  The proposed plan included visits to twelve states.

Gargaro failed to meet his proposed schedule.  Lowenthal dismissed Gargaro for failing to accomplish this goal.  As of September 11, 2001, Gargaro had scheduled visits to six of the 12 sites, and of the six remaining locations, five were on the east coast and could be visited on one trip.  The sixth, Florida, allegedly had little interest in meeting because they seldom sold retirement products.  After the 9/11 tragedy, Gargaro had to reschedule some meetings for December.  Gargaro says the tragedy caused a two month delay in travel.  Oppenheimer disputes this time delay, but says that even if true, the schedule should have been completed by the end of November.  By late November, 2001, Gargaro still had not completed the travel as discussed in the June, 2001, memorandum.  Additionally, Gargaro allegedly had been openly critical of Lowenthal, and thought that he was being asked to travel more than was necessary.

Gargaro says the June, 2001, conversation and resulting memorandum were not contentious and did not suggest that he would lose his job for failing to visit each office. Gargaro says Lowenthal did not indicate that Gargaro's job was on the line.  Gargaro did think Lowenthal's comment about needing more "energy" was troubling and evidence of age bias.

Gargaro says he was terminated on December 14, 2001.  Oppenheimer states Lowenthal terminated Gargaro on November 29, 2001.  Oppenheimer says Gargaro was discharged on November 29th, but permitted to work out of the office and clean things up until December 14th.

While Lowenthal made the decision, the news was relayed to Gargaro by

3

Fahnstock's head of Michigan Operations Bruce Rockwell (Rockwell).  Rockwell stated Gargaro was being terminated for insufficient travel during the previous summer.

In addition to the comment about needing to put "more energy" into his job, Gargaro also says he heard that Lowenthal introduced his replacement by saying something about having a younger guy that can put more energy into the position.  This comment was allegedly made to a co-worker in April, 2002.  The employee has not filed an affidavit to this effect. The last allegedly discriminatory statement is that Gargaro says he heard that Oppenheimer's general counsel told a person named Dennis Levasseur that they were getting rid of the "old guard at First of Michigan."  The general counsel did not take part in the decision to terminate Gargaro, and Levasseur has not filed an affidavit confirming the alleged statement.

At the time of his separation, Gargaro's salary was $150,000 per year.  Gargaro received a severance package, even though he was an at-will employee.  Lowenthal was born on April 11, 1945, and is older than Gargaro.  Oppenheimer acquired Fahnstock and all its rights and responsibilities in 2002, making it the proper defendant in this case.

On November 29, 2004, Gargaro filed suit against Oppenheimer in Wayne County Circuit Court alleging age discrimination under the Elliot Larsen Civil Rights Act. It was mailed that day to Oppenheimer in New York by registered mail.  The complaint did not arrive in New York until December 2, 2004.  Oppenheimer removed the case to federal court on grounds of diversity of citizenship.  28 U.S.C. § 1332.  Gargaro is a Michigan citizen, Oppenheimer is a New York corporation with its principal place of business in New York.

4

The Court heard oral argument on this motion in December, 2005.  At that time, the Court granted Gargaro 30 days in which to conduct additional discovery, and leave to file a supplemental response to Oppenheimer's motion for summary judgment. Gargaro filed supplemental papers, Oppenheimer did also.  The motion is now ripe for decision.

### III. Discussion.

### A. Legal Standard.

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion.  See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50.  Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in

5

summary judgment proceedings.  Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52).  The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).  Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255.  Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

### B. Analysis.

### 1. Statute of Limitations.

### a. Oppenheimer's Argument.

The statute of limitations under the Elliot Larsen Civil Rights Act is three years from the date of termination.  M.C.L. § 600.5805(10).  Oppenheimer says Gargaro was irrevocably terminated on November 29, 2001.[2]  Gargaro filed suit on November 29, 2004, but did not serve the complaint upon any agent of Oppenheimer until December 2, 2004, when the complaint was received in the mail.  Oppenheimer says service was

---

[2] Oppenheimer's record indicates a termination date of November 30, which Gargaro authenticated as being accurate.  At his deposition, Gargaro says he was terminated on November 29.

improper at this time because Michigan law requires corporations to be served by both personal service and by registered mail, which was not done in this case.  MCR 2.105(D)(2).  Oppenheimer raised the statute of limitations and inadequate service as defenses in its answer to the complaint.

Oppenheimer says even if proper service had been effectuated, the service would not have been timely under the statute of limitations because service was not completed within three years of the discharge.  Oppenheimer says the statute of limitations is not tolled by the mere filing of a complaint, but rather after proper service has either been completed, or after the complaint has been placed in the hands of an authorized peace officer for immediate service.  MCL § 600.5856; Gladych v. New Family Homes, Inc., 468 Mich. 94 (2003).  Oppenheimer says Gargaro cannot meet this standard, thus the statute of limitations expired before service.

Oppenheimer says that while it is true that Gargaro continued to show up at his old office until December 14, 2001, he admits that his position had been irrevocably terminated as of November 29, 2001.  Gargaro was on severance pay after this date, regardless of whether he showed up at the office or not, therefore the termination date from which to measure the statute of limitations did not change.  Salisbury v. McLouth Steel Corp., 93 Mich. App. 248 (1979).  Oppenheimer says a plaintiff cannot extend the statute of limitations by continuing to show up at work while being paid severance. When Lowenthal discovered Gargaro was coming to work, Gargaro was informed that he was no longer welcome.

### b.  Gargaro's Argument.

Gargaro responds that counsel conferred with Oppenheimer's General Counsel

7

in mid-November, 2001, and was advised that the Office of the General Counsel would accept service of the complaint on behalf of Oppenheimer.  On the same day he filed the lawsuit, Gargaro sent, via certified mail, a properly executed summons and copy of the complaint.  Gargaro says, under MCR 2.107(C)(3), service by mail is complete at the time of mailing.

In the alternative, Gargaro says his employment did not end until December 14, 2001.  Gargaro says the limitations period does not begin to run under the Eliot Larsen Act until the date the plaintiff leaves employment, Janikowski v. Bendix Corp., 823 F.2d 945 (6th Cir. 1987), and the last day worked is the date of discharge.  Salisbury, 93 Mich. App. at 250.  Gargaro says that from November 29 through December 14, 2001, he continued to work in the office, in the field visiting sales offices, received his regular salary, and received reimbursement for expenses.  On Friday, December 14, 2001, Gargaro received a severance check and was asked to leave.  Gargaro says he never believed he had to leave on November 29th.

### c. Oppenheimer's Reply.

Oppenheimer says Gargaro's deposition testimony supporting his assertion that he was terminated on December 14 does not contradict his previous testimony that he was irrevocably fired on November 29, and only states that he continued to work, by his own choice, until December 14.  Oppenheimer adds that it is the alleged act of discrimination which starts the running of the limitation period, because the inquiry is whether any of the conduct occurred within the three years proceeding the filing of the complaint.  Magee v. DaimlerChrysler, 472 Mich. 108, 109 (2005).  Oppenheimer says Gargaro knew he was terminated on November 29, even if he continued to hang around

8

the office.  Finally, Oppenheimer says Gargaro incorrectly cites MCR 2.107(C)(3), which only governs service of papers after initial "service of process, which is governed by MCR 2.105."  Longhofer, <u>Michigan Court Rules of Practice</u>, § 2107.1.  Thus, under MCR 2.105, service was not effective until December 2, if at all.  Oppenheimer says even if its General Counsel agreed to accept service, the Court could not acquire personal jurisdiction until someone in the corporation had actually received the pleadings, which did not occur until December 2.

### d.  Resolution.

MCL § 600.5856 states: "[t]he statute of limitations or repose are tolled in any of the following circumstances: (a) At the time the complaint is filed, if a copy of the summons and complaint are served on the defendant within the time set forth in the supreme court rules...."  There are multiple options for serving process on corporations, as governed by MCR 2.105(D).  While it may be true that Gargaro failed to meet the service of process requirements, there is no dispute that the complaint was filed within the statute of limitations, albeit the last possible day.  The failure to comply with service of process rules does not change the fact that the complaint itself was filed timely, thus tolling the statute of limitations under the statute.  The Michigan Court Rules outline the terms and time limits for effectuating service of process of complaints, MCR 2.103 though 2.106, but nowhere do these rules implicate the statute of limitations.  The three-year statute of limitations is the deadline for filing suit, and not the deadline for filing suit AND effectuating service of process.[3]  Thus, Oppenheimer's motion to dismiss on

---

[3] Because the Court finds that the statute of limitations is satisfied by filing suit on November 29, 2004, pending the completion of service of process, the Court need not

statute of limitations grounds is DENIED.

### 2. Civil Rights Claim.

### a. The Eliot Larsen Act.

Gargaro claims discrimination based on age under Michigan's Elliott-Larsen Civil

Rights Act ("Elliott-Larsen"), M.C.L. § 37.2202, which states in relevant part:

1. An employer shall not:

(a) fail or refuse to hire, or recruit, or discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment because of ...age....

(b) limit, segregate, or classify an employee or an applicant in any way which deprives or intends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of ... age....

Michigan courts have recognized two methods of establishing a prima facie case

of employment discrimination -- by either showing intentional discrimination through

direct evidence, or by showing discrimination through circumstantial evidence,

employing the burden shifting analysis set forth in <u>McDonnell Douglas Corp. v. Green</u>,

411 U.S. 792 (1973), used in cases alleging discrimination under Title VII.[4]  Gargaro

says he has made out a prima facie case using circumstantial evidence.

### b. Circumstantial Evidence of Discrimination.

### i. The Legal Standard.

---

reach the issue of whether Gargaro's continued presence at the Fahnstock offices somehow impacts the tolling of the statute of limitations.

[4] Michigan courts have applied the same analytical framework to claims under the Eliot Larsen Civil Rights Act.  <u>See Booker v. Brown & Williamson Tobacco Co.</u>, 879 F. 2d 1304, 1311-12 (6th Cir. 1989).

Where there is no direct evidence of discrimination, a plaintiff may rely on circumstantial evidence to establish a prima facie case of age discrimination under McDonnell Douglas.  The McDonnell Douglas test requires the Plaintiff to show: (1) he was a member of a protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position she lost, and (4) he was replaced by someone outside the protected class or a comparable non-protected person was treated better under circumstances giving rise to an inference of discrimination.  Hazle v. Ford Motor Co., 464 Mich. 456, 463 (2001).

If a plaintiff establishes a prima facie case of discrimination by circumstantial evidence, a presumption of unlawful discrimination arises.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).  A defendant, however, can rebut this presumption by producing evidence that the action was taken "for a legitimate, nondiscriminatory reason."  McDonnell Douglas, 411 U.S. at 802.  "[T]he defendant need not persuade the court that it was actually motivated by the proffered reasons."  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510 (1993) (citing Burdine, 450 U.S. at 254).  Although the defendant has the burden of production, at all times the burden of persuasion is on the plaintiff.  Id. at 506-07.

If the defendant rebuts the presumption, the plaintiff must show that the defendant's reasons were a pretext for discrimination.  See Thurman v. Yellow Freight Systems, Inc., 90 F.3d 1160, 1166 (6th Cir. 1996).  Plaintiff's pretext burden is satisfied when plaintiff offers proof that the defendant's reason "is unworthy of credence."  Reeves v. Sanderson Plumbing Products, Inc., 539 U.S. 143,  (2000).  Plaintiff need not show that the real reason was discrimination.  See id.

11

### c.  Gargaro's Prima Facie Case.

For the purposes of this motion, Oppenheimer admits elements one, two and four of the four-part test.  The only element in dispute is whether Gargaro was qualified for his position.  Gargaro points to the fact that he had been employed for nearly 20 years as a Tax/Retirement Vice President, and that Lowenthal kept Gargaro on staff for four years following the merger.  Not until Gargaro was terminated were his qualifications ever questioned.  Gargaro says that when determining whether he is qualified, the Court must evaluate a plaintiff independent of the employer's proffered non-discriminatory reason for the discharge.  Cicero v. Borg-Warner Auto., Inc., 280 F.3d 579, 585 (6th Cir. 2002).

### d.  Oppenheimer's Argument.

Oppenheimer asserts that Gargaro is unqualified for his job.  It says that Gargaro must demonstrate that "he was performing his job at a level that meets the employer's legitimate expectations."  Town v. Michigan Bell Telephone Co., 455 Mich 688, 699 (1997).  In this case, Oppenheimer says Gargaro set out the travel schedule to satisfy his employer's expectations of adequate fieldwork, and did not meet the expectations, despite promising to do so by the end of September, 2001, and had not even scheduled the majority of his trips by the time of the terrorist attacks on September 11, 2001.  Gargaro further admits that he still had not completed the branch visits two months beyond his self-imposed deadline.  Because he did not fulfill the expectations of his job, Gargaro was not qualified for the position.

### e.  Whether Oppenheimer's reason is pretext.

### i. Introduction.

Determining whether Gargaro established a prima facie case is a close call which the Court need not decide.[5]  If he does meet each prong of the test, Oppenheimer must come forward with evidence of a legitimate, nondiscriminatory reason for terminating Gargaro.

### ii. Oppenheimer's Nondiscriminatory Reason.

Oppenheimer says, citing to deposition testimony, that Gargaro's failure to visit the various branch offices outlined in the June memorandum by Gargaro's chosen deadline of the end of September, 2001, and Gargaro's failure, after the September 11, 2001, tragedy, to visit the remaining branch offices by the end of November, 2001, was the reason Gargaro was fired.  Oppenheimer also references a "personality conflict" between Gargaro and Lowenthal.   Given this evidence, Gargaro must show that Oppenheimer's stated reason for termination was a mere pretext, and that the true reason was discriminatory.

### iii. Gargaro's Argument.

Gargaro admits he failed to visit various branch offices in accordance with his June, 2001, memorandum.  However, Gargaro says the nondiscriminatory reason offered by Oppenheimer manipulates this memorandum to justify his termination. Gargaro argues that circumstantial evidence makes it more likely than not the explanation is a cover-up.  Gargaro points to (1) the demanding nature of the travel

---

[5] In his supplemental response brief, Gargaro says Oppenheimer admitted that plaintiff has established a prima facie case by stating that Gargaro was qualified. According to the transcript, Oppenheimer only conceded that Gargaro had the proper education and had held the position previously, not that he was in fact qualified.

13

assignment given his additional nationwide responsibilities; (2) the fact that he completed many visits and was re-scheduling the remaining visits; (3) the fact that his travel expense had increased over the previous year, indicating he was traveling more; (4) the fact that Lowenthal never communicated with Gargaro regarding the memorandum after he submitted it, or was aware his job depended on his fulfillment of the travel schedule; (5) his lack of past performance issues; (6) three ageist comments; (7) the fact that other older employees were separated from the company following Gargaro's dismissal, and (8) evidence that his job was restructured and reasonably allocated following his departure.

Gargaro said he was never informed his performance was being measured by his ability to complete the goals set forth in the memorandum. Lowenthal told Gargaro in June, 2001, that he needed to put "more energy" into his job. Rockwell and James Dziadziola (Dziadziola), two other employees subsequently let go by Lowenthal, say Lowenthal introduced Gargaro's replacement as "younger" and "more energetic." Fahnestock's general counsel allegedly told an acquaintance of Gargaro, Dennis Levasseur, that the company would soon be "getting rid of the old guard [at First of Michigan]."[6]  Though the general counsel was not a decision maker, Gargaro says such comments can be used to infer discrimination.  Yates v. Rexton, Inc., 267 F.3d 793 (8th Cir. 2001).

Finally, Gargaro points to the departure of two other older employees, who left Fahnstock soon after Gargaro was terminated, as evidence of a pattern of age

---

[6] Levasseur was unable to recall this comment at his December 19, 2005, deposition.

14

discrimination.  Gargaro says three of six Senior Vice Presidents voluntarily or involuntarily left Fahnestock in a short period of time.  Dziadziola, at the age of 62, says Lowenthal fired him just one week after being told he would not be let go.[7]  Rockwell retired from Fahnestock in June, 2002, but Gargaro says the departure was forced after Rockwell's responsibilities were given to a new position for which Lowenthal had instructed Rockwell to hire someone.  When considered in sum, Gargaro says this information creates a genuine issue of material fact sufficient to be considered by the jury.

### f. Oppenheimer's response.

Oppenheimer says Gargaro cannot prove the stated reason for his termination was pretextual because he admits that he did the very thing he was accused of doing, namely, failing to fulfill the goals he had established in a written memorandum to Lowenthal.  Gargaro was highly paid and had great demands upon him, but did not perform the duties expected of him.  Oppenheimer argues that Gargaro has only his subjective view that he was unfairly terminated to support his claim.  Oppenheimer argues that Gargaro is asking the Court to ignore his non-performance and that his employer somehow had an obligation to tell him in advance that his job was on the line.  Plaintiff asks the Court to overrule Lowenthal's decision to terminate him, Oppenheimer says, by finding that the admitted failure to fulfill his job responsibilities is not a valid reason for termination.

To prove pretext, Oppenheimer says Gargaro must present evidence either that

---

[7] The record does not reflect when this occurred.

15

the articulated reason for his discharge was not an actual factor, or that it was insufficient to justify the decision.  Meagher v. Wayne State University, 222 Mich. App. 700, 712 (1997).  Oppenheimer says Gargaro cannot meet this standard.  Even if the termination was an overreaction to the failure to the admitted failure to perform, Oppenheimer says this does not mean it was untruthful in citing the failure as its reason for the termination, Koski v. Stanvex Int'l Corp., 307 F.3d 672 (7th Cir. 2002), nor is an age discrimination claim a device by which a jury can "examine an employer's reasons for discharge and determine that the employer's business judgment and/or policies do not appeal to its sensibilities."  Brocklehurst v. PPG Indust., Inc., 123 F.3d 890, 898 (6th Cir. 1997)(internal citations omitted).  Additionally, Oppenheimer says the mere existence of a personality conflict does not raise a triable issue of fact regarding age discrimination.

Oppenheimer says the "more energy" comments are neutral and do not constitute circumstantial evidence of age discrimination.  In his deposition, Gargaro does not deny that the comment could be made to anyone and need not relate to people of advanced age.  Oppenheimer says Gargaro's own personal, subjective interpretation of his employer's remarks is insufficient to create an inference of age discrimination.  Abstract comments do not create a reasonable inference of age discrimination.  Gagne v. N.W. Nat'l Ins. Co., 881 F.2d 309, 314 (1989).  Comments about an older employee's lack of energy similarly are not enough to create an inference of age discrimination.  Fortier v. Ameritech Mobile Communication, Inc., 161 F.3d 1106, 1113 (7th Cir. 1998).  Oppenheimer adds that five and a half months passed after Lowenthal's alleged "ageist" comment before Gargaro was fired, meaning the

16

comment not probative of discriminatory intent.  <u>Fortier</u>, 161 F.3d at 1113.  Also, Lowenthal is older than Gargaro.

Next, Oppenheimer says second-hand comments do not support Gargaro's claim.  Oppenheimer says Lowenthal's alleged comment about Gargaro's replacement was "age neutral."  Oppenheimer notes that Rockwell, one witness to the alleged statement, did not remember the statement, and Dziadziola, the other witness, testified that Lowenthal introduced two people as "very young and energetic" without specifying the context, did not compare him to Gargaro, and does not know why Gargaro was fired.  At most, Oppenheimer says this is a "stray remark" that does not give rise to an inference of discrimination.

Oppenheimer says the general counsel's comment to LeVasseur was age neutral, made by a non-decision-maker, and LeVasseur could not remember hearing it or saying it to Gargaro.  Oppenheimer says both are hearsay.  Oppenheimer also says Gargaro's attempt to use statistics to develop a pattern of age discrimination in relation to other terminated employees is hyperbolic.  Gargaro only has his belief the former First of Michigan employees were forced out, and, even if they were, this evidences favoritism towards previous Fahnstock employees, the acquiring entity, not discrimination.

Oppenheimer also says that Rockwell supports its contention that Gargaro was underperforming.  In his deposition, Rockwell confirmed that Lowenthal had several conversations with Gargaro about his need to travel more, that the two had a personality conflict, that Gargaro was openly critical of Lowenthal, and that he also had to tell Gargaro to be "proactive" in his work.  Oppenheimer says Rockwell does not think

17

age had anything to do with Gargaro's dismissal, and remembered "often" seeing Gargaro playing solitaire on his computer.

Lastly, Oppenheimer says Gargaro's alleged "pattern evidence" proves nothing because the fact that three of six senior vice presidents left the company leaves open the question as to why they were let go, whether they were replaced, whether the terminations were related, and whether age was relevant to the terminations.  Also, Oppenheimer notes that Rockwell did not characterize his departure as a termination, instead saying he retired.

### g.  Resolution.

Viewing the evidence in the light most favorable to Gargaro, and making all reasonable inferences in his favor, the Court does not find a genuine issue of material fact as to the question of whether Lowenthal terminated Gargaro because of his age. Lowenthal's one comment to Gargaro about needing to put "more energy" into his job reflected a concern about Gargaro's ability to perform his job and complete a rigorous travel assignment, a concern eventually born out when Gargaro did not meet Lowenthal's expectations of him.  The alleged statement by Oppenheimer's general counsel was not confirmed at the deposition of Levasseur, the person who supposedly relayed the statement to Gargaro.  Even if true, the general counsel's statement reflects a movement to replace First of Michigan employees with Fahnstock employees after the acquisition, and does little to support a circumstantial case of age discrimination.

Lowenthal's alleged statements commenting on the age and energy level of Gargaro's replacement has a similarly weak impact in establishing age discrimination. After permitting additional time for discovery, Dziadziola testified in his deposition that

18

Lowenthal introduced two people, including Gargaro's replacement, as "very young and energetic."  Any inference that this statement slightly suggests Gargaro's age might have impacted Lowenthal's decision to dismiss him is unreasonable.  However, the statement, made in the spring of 2002, contains no comparison to Gargaro or anyone else, and is attributed to two people.  The statement appears to be an observation about the person who replaced Gargaro, made many months after Gargaro had left.  Lowenthal's alleged age-related comment about Gargaro's replacement may not be admissible, and, if true, is a relatively neutral statement that, on its own, holds little persuasive weight in developing a case of circumstantial discrimination.  Additionally, instead of confirming this statement, Gargaro's deposition of Rockwell produced evidence more damaging than helpful to his case.  Rockwell confirmed Lowenthal's desire for Gargaro to travel more, told Gargaro this himself, observed a personality conflict between Lowenthal and Gargaro unrelated to age, and witnessed Gargaro "often" playing solitaire at his computer.

Whether other former First of Michigan employees were forced out because of their age, thus evidencing a pattern of discrimination, only begins to be circumstantial evidence of age discrimination against Gargaro if those employees themselves believe they were discriminated against.  On the current record, it does not appear those employees have this belief.  In his supplemental response brief, Gargaro cites Dziadziola's deposition testimony stating he was surprised he was fired, as he had a week earlier been assured he would not be let go.  This surprise does not constitute an allegation of discrimination.  Gargaro's supplemental papers cite Rockwell's deposition testimony suggesting that Lowenthal forced Rockwell into retirement, and his departure

19

was not really a retirement.  The implication is that Rockwell was forced into retirement due to his age.  This implication is not evidence of discrimination, particularly when Rockwell himself still calls his departure from the company a retirement.  On the present record, the other employees' separation from Fahnstock is probative of only that the employees feel mistreated by Lowenthal.[8]

Gargaro presents evidence of his other job responsibilities, the offices he did visit, his increased travel over the previous year, his alleged lack of support staff, and his lack of knowledge that his job was at stake.  Even if true, this "evidence" does not support an inference that he was terminated as a result of age discrimination rather than a business decision after Gargaro failed to complete the tasks articulated in the memorandum.  Lowenthal's actions appear arbitrary and capricious.  However, this Court cannot overrule an employer's business judgment on such scant evidence of discrimination.  Brocklehurst v. PPG Indust., Inc., 123 F.3d 890, 898 (6th Cir. 1997).

---

[8] In his supplemental papers, Gargaro argues that sexual harassment law suits filed by at least four plaintiffs in the Eastern District of New York against Oppenheimer and Fahnestock, and a $4.4 million regulatory fine levied against Oppenheimer by the New York Stock Exchange, raise questions of Oppenheimer's credibility in this case that can only be resolved by a jury.  Unfortunately, Gargaro does not state how any of these cases are relevant to his case.

**IV.  Conclusion.**

Oppenheimer's motion to dismiss is DENIED.  However, because Gargaro has

not produced any evidence creating a disputed issue of material fact, Oppenheimer's

motion for summary judgment is GRANTED.  The case is DISMISSED.

SO ORDERED.


 s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  February 9, 2006


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, February 9, 2006, by electronic and/or ordinary mail.


 s/Julie Owens
Case Manager
(313) 234-5160